UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RACHEL C.B.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. 2:20-cv-00948-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## I.    ISSUES FOR REVIEW

1. Did the ALJ Err at Step Two in Finding Plaintiff's Postural Orthostatic Tachycardia Syndrome ("POTS") was not a Severe Impairment?
2. Did the ALJ Properly Evaluate Medical Opinion Evidence?

## II.    BACKGROUND

On November 10, 2016, Plaintiff filed an application for DIB, alleging therein a disability onset date of October 4, 2016 (later clarified to be August 23, 2016, AR 48).

On February 1, 2017, Plaintiff also filed an application for SSI, alleging the same disability onset date. AR 240. Plaintiff's applications were denied upon official review and upon reconsideration. AR 68–69, 104–05. A hearing was held before Administrative Law Judge ("ALJ") M.J. Adams on May 15, 2019. AR 37. On May 29, 2019, ALJ Adams issued a decision finding that Plaintiff was not disabled. AR 12. On May 18, 2020, the Social Security Appeals Council denied Plaintiff's request for review. AR 1.

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.   DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of status post left thyroid lobectomy for papillary thyroid cancer, hypothyroidism, peripheral/anatomic neuropathy, degenerative disc disease of the spine, neurocognitive disorder, affective disorder, and somatic symptom disorder. AR 17. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of light work. AR 17. Relying on vocational expert testimony, the ALJ found at step four that Plaintiff could perform not perform any past relevant work, but could perform other jobs existing in significant numbers in the national economy, thus concluding at step five that Plaintiff was not disabled. AR 27–28.

1. <u>Whether the ALJ Erred at Step Two in Finding Plaintiff's Postural Orthostatic Tachycardia Syndrome was not a Severe Impairment</u>

At step two, the "medical severity" of a claimant's impairments is considered. 20 C.F.R. § 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.920(c); SSR 85-28, 1985 WL 56856, at *3. The ALJ must consider all limitations and restrictions when formulating the residual functional capacity ("RFC"), even those stemming from impairments that are not "severe*.*" *See Buck v. Berryhill,* 869 F.3d at 1049; 20 C.F.R. § 404.1520(e). A plaintiff has the burden to show (1) he has a medically determinable impairment or combination of impairments; (2) the impairment or combination of impairments is severe; and (3) the impairment lasted at least 12 months. *See Bowen v. Yuckert*, 482 U.S. 137, 146, (1987); 20 C.F.R. § 404.1520(c), 416.920(c).

ALJ Adams determined at step two that Plaintiff suffered from the following severe impairments: status post left thyroid lobectomy for papillary thyroid cancer, hypothyroidism, peripheral/anatomic neuropathy, degenerative disc disease of the spine, neurocognitive disorder, affective disorder, and somatic symptom disorder. AR 17. Regarding a purported failure to include additional impairments, the ALJ discussed Plaintiff's reports of passing out, cognitive confusion, and joint and muscle pain, and their impact on Plaintiff's RFC, finding Plaintiff could not climb ladders, ropes, or scaffolds, could not work at unprotected heights, and could stand and/or walk, with breaks, for six hours of an eight-hour day, in addition to finding that she needed to avoid

concentrated exposure to extreme cold, wetness, humidity, vibrations, fumes, odors, dusts, gases, poor ventilation, hazardous machinery, or unprotected heights, as well as explicitly including peripheral/anatomic neuropathy among plaintiff's impairments. AR 20.

Since the ALJ ultimately decided step two in Plaintiff's favor, any error regarding these impairments is harmless. If the ALJ considers an impairment's effect on a claimant's ability to do work activities and includes those limitations in the RFC, the omission of the impairment from the step two evaluation is harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Buck*, 869 F.3d at 1049. Furthermore, outside of purely subjective allegations, Plaintiff does not address how these omissions impacted the RFC – accordingly, she has failed to show error at step two. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

2. <u>Whether the ALJ Properly Evaluated the Medical Opinion Evidence</u>

Plaintiff assigns error to the ALJ's evaluation of medical opinion evidence from six treating and examining sources. Dkt. 23, pp. 7–17.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *Lester*, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830–31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830–31; *Tonapetyan*, 242 F.3d at 1149.

Licensed social workers are "other sources," and their opinions may be given less weight that those of "acceptable medical sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) ("acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists); *see also* 20 C.F.R. § 404.1513(d), § 416.913(d). Nevertheless, evidence from such "other sources" may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d). Given the fact that they are not acceptable medical sources, however, evidence from these "other sources" may be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons germane to each [source] for doing so." *Molina*, 674 F.3d at 1111.

A. Opinion of Dr. Liou

Lee Liou, M.D., Plaintiff's treating neurologist, offered an opinion as to Plaintiff's functional capacity on March 25, 2018. AR 372. The opinion pertained only to the effects of Plaintiff's small-fiber neuropathy, which Dr. Liou stated caused foot numbness and neuropathic pain. *Id.* Owing to this impairment, Dr Liou opined that Plaintiff would be limited in her ability to stand, walk, or sit, but did not state more specifically how limited she would be; but Dr. Liou opined the impairment would last for a continuous period of at least 60 months. *Id.* Dr. Liou's evaluation form contained a question asking whether Plaintiff had a medically determinable physical or mental impairment that would prevent her from engaging in substantial gainful activity; the question was answered "yes." *Id.*

The ALJ gave little weight to this opinion, reasoning that Dr. Liou's opinion: (1) only discussed Plaintiff's small-fiber neuropathy, and no other conditions; (2) was inconsistent with her own findings; (3) was inconsistent with the longitudinal record; and (4) contained an assessment of Plaintiff's ability to perform substantial gainful activity, an issue reserved to the Commissioner. AR 25.

With respect to the ALJ's first reason, the fact that Dr. Liou opined on the effects of one, but not other, of Plaintiff's impairments was not a valid reason to discount his opinion where Dr. Liou specialized in neurology, not psychology. A medical source opinion may be given less weight when the source opines on matters outside his or her area of expertise. *See Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference given to opinion of specialist about medical issues related to his or her area of specialty). However, a medical opinion on an issue *within* the source's area of

expertise should not be discounted on the basis that the source failed to opine on matters *outside* the source's area of expertise. Were this a valid reason to discount an opinion, medical experts would be effectively encouraged to opine on matters with which they were not familiar, undermining the overall reliability of medical expert testimony in Social Security cases. Applicable case law and regulations do not encourage, let alone mandate, such a result.

With respect to the ALJ's second reason, an ALJ need not accept the opinion of a treating source "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Batson*, 359 F.3d at 1195.

Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding treating opinion "conclusory" and supported by "little explanation," where ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"); *Revels*, 874 F.3d at 663 (finding ALJ erred in rejecting treating physician's opinion as supported by "little explanation," where record included treatment notes supporting the opined limitations). Here, the ALJ seemed to consider Dr. Liou's opinion about Plaintiff's limitations as a stand-alone document, in spite of Dr. Liou having seen Plaintiff at least eight times between 2017 and 2019. See AR 25, 379, 584, 822, 832. This was error.

With respect to the ALJ's third reason, an ALJ need not accept the opinion of even a treating physician if that opinion is inadequately supported "by the record as a whole." *See Batson*, 359 F.3d at 1195. The ALJ pointed to physical examinations that contained "mostly normal findings, including good strength, normal gait, and/or intact

sensation." AR 22 (citing AR 405, 496, 565, 756, 825, 847). However, the ALJ did not address that physical examinations frequently showed Plaintiff had painful feet and did *not* have intact sensation in her feet. *See, e.g.* AR 708, 714, 717-18, 756, 770-75, 825. This is a symptom of the condition for which Dr. Liou treated Plaintiff, and the ALJ's failure to address its presence in multiple physical examinations, while relying on the same examinations to discount Dr. Liou's opinion, was error.

With respect to the ALJ's fourth reason, a doctor's opinion that it was unlikely that the claimant could sustain full-time competitive employment is not a conclusion reserved to the Commissioner, but is "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment given the many medical and mental impairments [claimant] faces and her inability to afford treatment for those conditions." *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).

The Commissioner argues that the ALJ properly discounted Dr. Liou's opinion because it was too vague to allow translation into concrete functional limitations in Plaintiff's RFC. Dkt. 24, p. 6. However, the ALJ did not identify this as a reason for giving Dr. Liou's opinion little weight. This Court will not affirm the ALJ on a ground upon which they did not rely. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

Because the ALJ did not give any specific and legitimate reason for giving low weight to Dr. Liou's opinion, the ALJ erred. While the ALJ erred, the Court must determine whether this error was harmless. Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d at 1115. An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

In this case, the ALJ's error was not harmless. Had the ALJ properly considered Dr. Liou's opinion, the RFC may have included additional limitations. In turn, with such limitations included in the RFC, the ultimate disability determination would have changed. Accordingly, the ALJ's error was not harmless and requires reversal.

### B. Opinions of Drs. McClincy and Yau

Michael McClincy, M.D., Plaintiff's treating physician, rendered a physical functional evaluation of Plaintiff for the Washington Department of Social and Health Services on February 2, 2017. AR 641–45. He noted diagnoses of peripheral neuropathy, papillary thyroid cancer, and cognitive complaints. AR 642. Dr. McClincy stated that Plaintiff's peripheral neuropathy would cause moderate limitations in her ability to stand, walk, carry, push, and pull, and her thyroid cancer would cause severe limitations in all work activities until a period after the cancer was removed. *Id.* He

stated, however, that he could not assess the effect of Plaintiff's cognitive complaints without testing. *Id.*

Lili Yau, M.D., evaluated Plaintiff on December 13, 2017, for Washington's Department of Social and Health Services. AR 626–28. In her evaluation, she noted diagnoses of peripheral neuropathy, primary thyroid cancer, and cognitive confusion. AR 628. According to Dr. Yau, Plaintiff's peripheral neuropathy caused moderate limitations on her ability to stand, walk, carry, push, and pull; her thyroid cancer caused no severe limitations, and her cognitive confusion would cause mild limitations in her ability to communicate. *Id.*

The ALJ gave little weight to these opinions, reasoning that they were inconsistent with minimal physical examination findings and the lack of observations of Plaintiff presenting in any significant distress. AR 25. This is essentially the same reasoning that was given for the rejection of Dr. Liou's opinion on Plaintiff's limitations, which as discussed above, was not supported by substantial evidence. The ALJ erred in rejecting these opinions without giving specific and legitimate reasons for doing so.

C. Opinion of Dr. Bartlett

Kerry Bartlett, Ph.D. performed an evaluation on March 29, 2017, including reviewing Plaintiff's records and conducting a clinical interview, mental status examination, trailmaking test, and the Wechsler Memory Scale, 4th edition. AR 569–77. She offered diagnoses of recurrent, severe major depressive disorder with psychotic features, psychological factors affecting other medical conditions, mild neurocognitive disorder with significant impairment of memory functioning, processing efficiency, and cognitive stamina of uncertain etiology; rent treatment for thyroid cancer and

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

subsequent supplementation, recurrent migraine headaches, recent right ankle surgery, largely resolved; and peripheral neuropathy and non-alcoholic fatty liver disease of uncertain etiology. AR 574.

As for Plaintiff's limitations, Dr. Bartlett opined that she would have significant difficulty reliably coping with the normal demands associated with a full-time, competitive work day and work week. AR 574. She stated that Plaintiff's limited cognitive stamina would impact her ability to learn a new job without specialized support and to respond adaptively to novel changes in usual circumstances. *Id.* Dr. Bartlett opined that Plaintiff could cope with basic demands for comprehending, recalling, executing, and making judgments about straightforward work demands before becoming fatigued, but that such fatigue would occur quickly and Plaintiff would not be reliable over the course of a full-time work day. *Id.* Finally, Dr. Bartlett opined that Plaintiff would be unreliable with carrying out more complex commands for the same reason, and would also be unreliable in her ability to engage in accurate communications on the job over the course of a full-time work day. *Id.*

The ALJ gave little weight to this opinion, reasoning that it was: (1) inconsistent with the medical record; (2) inconsistent with Plaintiff's activities of daily living and minimal engagement with mental health treatment; (3) based on a one-time examination and minimal review of treatment records; and (4) supported only by Plaintiff's own subjective complaints. AR 26.

With respect to the ALJ's first reason, as stated above, an ALJ need not accept the opinion of a treating or examining doctor if that opinion is inadequately supported "by the record as a whole." *See Batson*, 359 F.3d at 1195. Here, the ALJ relied on

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

Plaintiff's adequate performance in mental status examinations throughout the record as well as a lack of observations of psychiatric difficulties. AR 26. In so relying, the ALJ did not address instances in which Plaintiff presented with significant issues—for example, an April 2019 consultation in which Plaintiff was noted to have pressured, loud speech, presented as overwhelmed, and would frequently cry before attempting to change the subject by telling a joke. AR 803. Plaintiff's ability to present without psychiatric difficulties on some occasions does not negate her inability to do so on others.

The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Similarly, here, Plaintiff's ability to complete mental status examinations does not negate Dr. Bartlett's opinion that she would be unreliable in coping with the demands of a normal work environment.

With respect to the ALJ's second reason, a claimant's participation in everyday activities indicating capacities that are transferable to a work setting may constitute a specific and legitimate reason for discounting a medical opinion. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

Yet, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Here, the ALJ cited only Plaintiff's ability to drive. AR 24. Without more, this activity does not negate Dr. Bartlett's opinion as to Plaintiff's ability to cope with the stressors of a normal workplace. While it is true, as the ALJ notes, that driving "requires constant attention, making decisions, using judgment, and the ability to react quickly to unexpected obstacles or hazards," this activity could be completed on Plaintiff's own time and to her own standards. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

As to the ALJ's finding that Plaintiff failed to pursue treatment, the fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Without further explanation of how this specifically undermined Dr. Bartlett's opinion, this is not a specific and legitimate reason to discredit it.

With respect to the ALJ's third reason, the fact that Dr. Bartlett examined Plaintiff only once would be a valid reason to give less weight to her opinion than that of a treating psychologist, but "it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester*, 81 F.3d at 832. Such was the case here, where the ALJ gave greater weight to the opinions of non-examining psychologists Matthew Comrie, Psy.D. and Gary Nelson, Ph.D. AR 26. The ALJ erred to the extent he relied on the one-time nature of Dr. Bartlett's examination to discount her opinion.

With respect to the ALJ's fourth reason, if a treating or examining source's opinions are based "to a large extent" on an applicant's self-reports and not on clinical

1  evidence, and the ALJ finds the applicant not credible, the ALJ may discount the
2  source's opinion. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008); *see also*
3  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). However, when an opinion is
4  not more heavily based on a patient's self-reports than on clinical observations, there is
5  no evidentiary basis for rejecting the opinion. *See Ryan v. Commissioner of Social Sec.,*
6  528 F.3d 1194, 1199–1200 (9th Cir. 2008).

Clinical interviews and mental status evaluations are "objective measures" that "cannot be discounted as a 'self-report.'" *See Buck*, 869 F.3d at 1049. Here, Dr. Bartlett formed her opinion after administering a clinical interview and several tests, including the mental status examination, trailmaking tests, and the Wechsler Memory Scale. AR 572. These tests, in turn, informed Dr. Bartlett's ultimate opinion on Plaintiff's limitations; the proposition that Plaintiff's self reports informed the opinion to the exclusion of these objective tests is not supported by substantial evidence.

D. Opinion of Dr. Walker

Ellen Walker, Ph.D., evaluated Plaintiff on January 8, 2018, conducting a clinical interview and mental status examination. AR 616–19. She diagnosed Plaintiff with recurrent moderate major depressive disorder and generalized anxiety disorder. AR 617. Based on these impairments, she opined that Plaintiff would have marked limitations in understanding, remembering, and persisting in tasks by following detailed instructions, learning new tasks, communicating and performing effectively in a work setting, and completing a normal work day and work week without interruptions from psychologically based symptoms. AR 618. She further opined that Plaintiff would be moderately limited in her ability to adapt to changes in a routine work setting, and in

being aware of normal work hazards and taking normal precautions. *Id.* She opined that these impairments could be expected to last 24 months with treatment, but that Plaintiff would not be a good candidate for work at the time because of medical instability and resultant symptoms of depression, anxiety, cognitive and concentration issues, and fatigue. AR 618.

The ALJ gave this opinion little weight, reasoning that: (1) it was based on a one-time encounter, with minimal review of Plaintiff's treatment records; (2) was supported only by Plaintiff's subjective statements; (3) was inconsistent with the longitudinal medical record; and (4) was inconsistent with Plaintiff's activities and minimal engagement with mental health treatment. AR 26.

The ALJ's reasons are the same as those given for the rejection of Dr. Bartlett's opinion on Plaintiff's limitations. As discussed above, they are not supported by substantial evidence.

E. Opinion of Tim Raymond, LICSW, MHP

Tim Raymond, a licensed social worker who saw Plaintiff for three appointments, offered an opinion as to her abilities in a letter dated May 13, 2019. AR 826–30. In this letter, he noted that Plaintiff was being treated for recurrent, severe major depressive disorder. AR 826.

In an attached form, he opined that Plaintiff would be unable to perform several tasks and functions on a reliable, sustained schedule, including understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; working in coordination with or proximity to others without being distracted by them; completing a normal work day and week

without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number or length of rest periods, and responding appropriately to changes in a work setting. AR 828–29.

She would be able to understand and remember very short, simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without supervision, and make simple work-related decisions, but would have a noticeable difficulty in doing these tasks for more than 20% of the work week. *Id.* Finally, Mr. Raymond opined that Plaintiff would be able to carry out very short and simple instructions, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors, but would have noticeable difficulty in these areas between 11 and 20% of the work day or week. Mr. Raymond opined that these limitations could be expected to last 12 months or more. AR 829.

The ALJ gave this opinion no weight, reasoning that it was: (1) mostly based on Plaintiff's subjective complaints; (2) inconsistent with the medical record; and (3) inconsistent with Plaintiff's daily activities and minimal mental health treatment. AR 26–27.

Plaintiff's brief states only that Mr. Raymond's opinion "merit[s] some weight," without any argument as to why except insofar as it was consistent with the other medical opinion evidence. Plaintiff has failed to show the ALJ harmfully erred in rejecting Mr. Raymond's statements. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407–09) (The party challenging the administrative tribunal's decision has the burden of proving harmful error). The Court will not consider matters that are not

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16

"'specifically and distinctly'" argued in Plaintiff's opening brief. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). Plaintiff's conclusory assertion is insufficient to show the ALJ harmfully erred in rejecting Mr. Raymond's statements. Dkt. 23, p. 15.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he/she determined Plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. ALJ is directed to re-evaluate the medical opinion evidence and any new evidence Plaintiff may present.

Dated this 26th day of August, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge